*Court of Common Pleas, Dauphin County, January 4th,* 1859.

## George et al. *v.* Lawrence.

When a sequestrator is appointed to take charge of all the real estate, goods, chattels, credits, rents, issues, profits, and effects of a corporation, he is entitled to all the property of every description belonging to the company.

When an insurance company takes some risks upon the principle of mutual insurance with premium notes, and others for cash, those of the latter class have no claim, in case of loss, upon the notes of the former.

By the Court.—A judgment was obtained against the "State Fire and Marine Insurance Company of Pennsylvania" in the District Court for the City of Philadelphia, on account of a marine loss sustained by the plaintiff in the action; and after a regular proceeding in court, the defendant in this bill was appointed a sequestrator to take charge of the real estate, and of all goods, chattels, credits, property, rents, issues, profits, and effects of said corporation, and dispose of and manage the same according to law. Pursuant to the command of the writ, Mr. Lawrence took possession of all of the effects of the company, including their books, choses in action, etc., and this bill is brought to restrain him from interfering with what the plaintiffs say is a distinct class of property, having no connection with the claim under which he is acting.

"The State Mutual Fire Insurance Company" was created by an act of Assembly, passed March 22d, 1850, and in its charter of incorporation are found some strange and anomalous provisions. It is in the first place authorized to make the ordinary contracts of insurance against losses by fire, as a mutual company. The act next provides that all persons insuring shall, during the continuance of the policy, be members of the company. The fourth section provides for giving premium notes and paying an additional sum in cash, and also for insuring property for *money in lieu of a premium note.* The

tenth section says that the property insured may be divided by the directors into one or more distinct classes; in the first class may be insured the less hazardous descriptions of property, and in the second the more hazardous; the policy to designate the class of risk with which the insured is associated, and the deposit notes, cash premiums, and assessments on members, shall be held and assessed to pay the class to which they belong, *and no other;* the general expenses to be apportioned to each class according to the amount insured in each.   The next section provides that, if the stock deposited (as we understand it by each class) shall not be sufficient to pay *all* the losses by fire, the insured shall be paid their proportionate dividend of the whole stock, according to their respective losses, and the respective sums insured to them.   That is, as we understand it, if their own class has not funds to pay their loss, they can come on the other class, the stockholders of which must pay according to their respective contracts of insurance; for there is no other stock on which the insured can come, except the cash in the treasury and the premium notes, there being no stock subscription.   The twelfth section makes every member of the corporation liable for the losses in proportion to the amount of his deposit notes; and in order to pay those losses, and the necessary expenses of the company, he may be sued by the corporation, and obliged to make personal contribution in that proportion.   We are thus presented with these legislative contradictions : First.  The persons insuring are all to be members. Second.  Those not giving a premium note, but insuring for cash, are not to become members.   Third.  The notes of persons belonging to each class are to be liable, for the losses of their own class *"and none other."*   Fourth.  If any class loses more than it is able to pay, the loss must be paid by the other class; and, lastly, each individual is made responsible for all losses, in proportion to the amount of his premium note, or amount insured.   Such was the situation of this corporation, and the liability of the corporators, when the act of the 15th of February, 1853, was passed.   That gave the corporation a new name, " The State Mutual Fire and Marine Insurance Company of Pennsylvania," and authorized it " to insure all kinds of property against loss or damage by fire, *or any cause of risk,* to make all kinds of insurance against loss or damage of goods, merchandise, or other property, in the course of transportation by land, water, or otherwise, or on any vessel, boat, or other water craft."   A majority of the board of directors can authorize the secretary of the company to take subscriptions of the stock to the amount of from one to three hundred thousand dollars; and the corporation may effect perpetual or other insurance " *under said capital stock,*" without the parties so insured becoming members of the company, participating in the profits, or being liable for the losses; and the profits so made are to be divided among

[George et al. *v*. Lawrence.]

the stockholders. We thus have a stock company ingrafted on a mutual, by a new name, but under a supplement to the original law of incorporation, and the former kept in full force, whilst the members thereof are not necessarily members of the new company, and are not entitled to participate in the profits, or bound to bear the losses. Why a new company was not created we are unable to perceive, unless those who managed the affairs of the incorporation wished to procure such legislation as would, in addition to their former contradictions, render confusion worse confounded. The first question presented for our decision is, has the legislature created two corporations, or is the present a mere modification of the former? That it is but one company appears pretty plain from the words of the supplement. True, it has a new name of baptism, is changed from a mutual to a stock company. The individual liability principle is destroyed, and it appears pretty clear that no person insured for a marine loss, "*under the capital stock*," can ever, in any event, interfere with the funds of the mutually insured, however carelessly the policy may be worded. Were it an insurance against fire, there might be great difficulty in determining whether it could or could not claim to be reimbursed out of the mutual notes, if the policy designated it as belonging to one of the classes adopted by the company, and there was nothing to show that it was given and accepted on the faith of the stock fund. This arises out of the provision in the fourth section of the original charter, which authorizes an insurance for *cash*, as well as on the mutual principle. No such difficulty can exist in relation to marine policies, as they are only provided for in connection with the stock subscription. To us it is, therefore, very clear that the gentlemen who recovered the judgment on which the writ of sequestration was issued, can have no claim on the notes given for mutual insurance; they must collect their debt out of the other funds of the company, arising out of their stock subscription. We are not called on in the present case to determine whether the notes given for the purpose of mutual insurance prior to February, 1853, can or cannot be collected by the present corporation, with its changed name and altered character; that may depend on the participation of the obligors in the acts of the company since its modification. Nor need we decide whether the sequestrator can or cannot collect any of those notes; that question will be settled when suits are commenced, and may turn on the character of the loss for which the money is required. All we have to decide is, whether the sequestrator can or cannot take into his custody all the assets of this corporation, for the purpose of distributing the avails thereof among the respective creditors, agreeably to law?

After the most careful consideration we are of the opinion that under the act of Assembly he is entitled to seize all the effects of

the company of every nature and kind, and dispose of them for the payment of the debts, as the company itself would have been obliged to apply them. The act of the 16th of June, 1836, under which this proceeding took place, contemplates no second or subsequent sequestration. It does not design that the seizure of the effects of a corporation shall be limited or partial, but when its insolvency is evidenced by a return of *nulla bona*, the whole must go into the hands of an officer of the law for distribution. The object of the legislature and effect of its enactment is to compel punctuality on the part of corporators in liquidating their debts, and give an effectual remedy to their creditors in case of failure. " The sequestrator is clothed with all the powers and is subject to all the duties of trustees appointed under the law relating to insolvent debtors. In the latter case, by the assignment of the debts and by operation of law on his discharge, all the estate of the insolvent, whether real, personal or mixed, in possession or in action, and wheresoever situated, is vested in trustees for the benefit of creditors. So, here, the sequestration of the estate and the appointment of the sequestrator operates as a statutable assignment of all the effects and estate of the corporation, in the same manner and to the same extent, with the limitations which the court may impose on it for the public good, as in the case of trustees of an insolvent debtor." Such is the language of C. J. Gibson, in Turnpike Company *v.* Wallace (5 W. 318), and we find the principle reiterated in substance by Judge Rogers, in Bevans *v.* The Turnpike (10 Barr, 178).

It is strongly analogous to the case of an assignment by an insolvent in another particular: no priority is given to the acting creditor after sequestration, but the effects are seized by the officer of the law for the benefit of all (5 W. & S. 265). Hence the necessity of the sequestrator having the control of all the assets. It is very true that he must collect and distribute them according to the nature of the respective contracts and the terms of the charter; but his action in making distribution will be controlled by the judgment of the court before which he must settle his account.

The plaintiffs in this bill have no cause to complain. They cannot be obliged by the sequestrator to pay any money which could not have been collected by the corporation; nor can the fund, when collected, be diverted to any other object than was agreed by the original contract under which they gave their notes. The court which appointed the present sequestrator must have considered him both competent and responsible to take charge of the property confided by the mandate of the writ to his care; and the act of Assembly does not contemplate that the officers of a corporation shall any longer be intrusted with its assets when they have, by either mismanagement or misfortune, so involved

it as to render it insolvent and unable to pay its debts. This insolvency is conclusively evidenced by a return of the sheriff that there are no goods or lands belonging to the institution out of which he can collect the amount of the creditor's judgment.

The special injunction in this case is refused. Should new points be presented on the coming in of the answer and proofs, the ultimate rights of the parties can then be finally determined.

*Kunkel and Simonton, for plaintiff.*

*Lawrence, for defendant.*